UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-20695-CIV-LENARD/GARBER

SHIRLEY CLOW and ALBERT
GAMBLE, individually and as Personal
Representatives of the Estate of Scott
Gamble, Deceased,

Plaintiffs,

v.

SISSY BABY SPORT FISHING, INC.,
et al.,

Defendants.
_____/

## ORDER

THIS CAUSE is before the Court by Order of Reference of U.S. District Judge Joan A. Lenard.  Pursuant to such reference, the Court has received Plaintiffs Shirley Clow and Albert Gamble's Motion for Fees and Costs [DE 56], Defendant Genny Van Laar's Response in Opposition [DE 61], and the Reply [DE 65].  The court also held a hearing on the matter on April 22, 2010.

### Background

This case arises out of the murders of four people on board a chartered fishing boat called the "Joe Cool."  The murderers were convicted and are currently in prison.  The deceased individuals were all associated with or employees of the charter company that owned the boat.  The representatives of the estates filed civil lawsuits against the owners of the vessel under the Death on the High Seas Act, 46 U.S.C. § 761, *et seq.* (DOSHA), the Jones Act, 46 U.S.C. § 688, *et seq.*, and Negligence theories.  The instant motion was filed by Shirley Clow and Albert Gamble (hereinafter "Clow" and "Gamble"), who are the personal representatives of their son, Scott Gamble's

(hereinafter "Scott"), estate. Clow is also the *former* personal representative of the estate of her son from a different marriage, Jake Branam (hereinafter "Jake"). Also killed on the ship was Jake's wife, Kelley, and Samuel Kairy. Attorney Jerome Pivnik (hereinafter "Pivnik" or "Plaintiffs' Counsel") represents Clow and Gamble. This case contains a rather confusing sequence of events as there appears to have been a great deal of confusion about who were the appropriate representatives of the estates.

Clow and Gamble filed this lawsuit in March 2009 on behalf of Scott. On June 3, the Court referred the action to mediation. On June 26, the insurer for one of the defendants filed a declaratory judgment action which was consolidated in the Clow/Gamble lawsuit. On September 14, 2009, Genny Van Laar (hereinafter "Van Laar"), Kelly's sister, filed a lawsuit against the same defendants as personal representative of both Jake and Kelly's estates. Van Laar is represented by Attorney Sean Cleary. On September 19, Clow also filed an action as personal representative of Jake's estate. Finally, on September 22, Leanne Van Laar Uttmark (hereinafter "Uttmark"), as the personal representative of Kelly's estate, filed an action as well. The family of Samuel Kairy (hereinafter "Kairy"), the fourth victim, filed an action on September 22 also. The same attorney, Marc Brumer (hereinafter "Brumer"), represented both Uttmark and Kairy's estates.[1] On September 23, the mediation took place. Although only Clow and Gamble were ordered to mediation, all the other Plaintiffs participated as well. On November 4, Clow dismissed the action she filed as personal representative of Jake's estate.

All of the actions were consolidated except for Kairy's. Of note, all of the complaints were

---

[1] The Court notes that Brumer never responded to this Motion, however, it appears from the docket that he was never served with it, and there was debate at the hearing regarding whether he was in fact notified of the Motion and the hearing. A supplemental filing on April 22, 2010 reveals that Brumer indeed may have received the Motion after it was filed. *See* DE 90.

copied virtually verbatim from the original complaint that Clow and Gamble filed in March. At present, it appears as if all of the parties have settled, and this is the only motion pending in the case.

Analysis

Plaintiffs' counsel argues that he is entitled to a lien on the parties' settlement agreements under the "common fund" doctrine, quantum meruit, and implied contract.[2] The Motion, however, deals primarily with the common fund doctrine. Pivnik stated at the hearing that he believes that his arguments for quantum meruit and implied contract are tied in with his argument for a common fund. As a preliminary matter, the Court does not believe this is so, and having heard no evidence of an implied contract or basis for quantum meruit, the Court need not delve into these issues.

Plaintiffs' counsel contends that he is entitled to fees because he spent a significant amount of time in connection with this matter engaged in discovery with Defendants, eventually bringing this case to the point where the Defendants were willing to settle. He also states that he responded to the declaratory judgment action filed by the insurer and engaged in many meetings with Uttmark's former attorneys, as well as attending the criminal trial.

Under the common fund doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The doctrine is an exception to the American rule that each litigant must bear his own attorney's fees and rests on the principle that non-parties who reap substantial benefits from litigation without contributing to its cost should not be unjustly enriched." *In re J.H. Inv. Services, Inc.*, 418 B.R. 413, 425 (M.D.Fla. 2009). Pivnik argues that the following five requirements for collection of fees from a common fund are met:

---

[2]Courts recognize that applications for fees are "really made by and on behalf of the attorney" as the attorney is the actual party in interest. *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1521 (11th Cir.1988).

> (1) The existence of a fund over which court has jurisdiction and from which fees can be awarded;
> (2) The commencement of litigation by one party which is terminated successfully;
> (3) The existence of a class which received, without otherwise contributing to the lawsuit, substantial benefits as a result of the litigation;
> (4) The creation, preservation, protection, or increase of the fund as a direct and proximate result of the efforts of counsel for litigant;
> (5) The reasonable relationship between the benefit established and the fees incurred.

*In re J.H. Inv. Services, Inc.*, No. 8:08-cv-02321-JDW, 2009 WL 3171407, at *8 (citing *Fidelity & Cas of N.Y. v. O'Shea*, 397 So. 2d 1196, 1198 (Fla. 2d DCA 1981). The Court does not need to examine all of these requirements as Plaintiffs' counsel cannot even overcome the first—here, there is no common fund. Furthermore, while there may be similarly situated plaintiffs, this case is not a class action, as typically associated with common funds, in which the litigation generated a fund. *Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001).

Plaintiffs' counsel relies on *Sprague v. Ticonic Nat'l Bank* for the proposition that a formal class or fund does not need to be established for the common fund doctrine to apply where a plaintiff successfully prosecutes litigation in which others would benefit. 307 U.S. 161 (1939). In *Sprague*, the plaintiff sued the bank for a disbursement of certain bonds that secured money she had deposited in a trust fund at the bank. *Id*. at 162. The bank closed and was put in the hands of a receiver. *Id*. at 163. The plaintiff sued to put a lien on the proceeds of the bonds for the trust deposit. *Id*. The Court recognized that the lawsuit, through the principle of *stare decisis*, "established the claims of fourteen other trusts" that pertained to the same bonds as they were similarly secured by the bonds. *Id*. at 166. The Court found that while the plaintiff "neither purported to sue for a class nor formally established by litigation a fund available to the class," its discretion allowed for the grant of reimbursement under equitable grounds from the bond disbursements. *Id*. The Court reasoned that "when such a fund is for all practical purposes created for the benefit of others, the formalities of the

litigation—the absence of an avowed class suit or the creation of a fund . . . —hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation." *Id*. at 167.

In the instant case, however, there are significant differences from *Sprague*. Here, the Plaintiffs all appear to have settled their matters separately and filed their own lawsuits. Also, in *Sprague*, the fees were to be taken from the bond proceeds that secured the potential plaintiff's money. In effect, the bonds created a fund as it was a common pool in which the plaintiff and potential plaintiffs were paid the money owed to them. Here, there is simply no common fund. The settlements appear to be separate arrangements from each other.

Plaintiffs' counsel also relies on *In re Air Crash Disaster at Florida Everglades on Dec. 29, 1972*, 549 F.2d 1006 (5th Cir. 1977). *In re Air Crash*, however, involved multi-district litigation with numerous plaintiffs and extensive discovery. The court "appointed as 'lead counsel' for plaintiffs a 'Plaintiffs' Committee,' and counsel for the Committee, who between themselves represented 60 plaintiffs." *Id.* at 1008. The Committee was chiefly involved in organizing discovery and other pretrial preparation. *Id*. The attorneys that did not do any pretrial work were ordered to pay the Committee attorneys a portion of their fees. *Id*. This is nothing like the case at hand. The attorneys here were never ordered to work together, nor did they ever agree to. Without any sort of agreement among the attorneys, or the presence of a common fund, there are no grounds for awarding Plaintiffs' counsel a portion of the other attorneys' fees. Accordingly, it is hereby

ORDERED that Plaintiffs Clow and Gamble's Motion for Fees and Costs is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida this 26th day of April, 2010.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE